```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

                                    )
UNITED STATES OF AMERICA            )
                                    )
         v.                         )   CRIMINAL NO. 04-10288-RWZ
                                    )
JARED KNOWLTON                      )
                                    )
```

GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by Michael J. Sullivan, United States Attorney, and David G. Tobin, Assistant U.S. Attorney, hereby files this sentencing memorandum to aid the Court in its disposition of the above-captioned action. The United States agrees with U.S. Probation that Jared Knowlton's ("Knowlton") Total Offense Level ("TOL") is 23, his Criminal History Category ("CHC") is I, and his Guideline Sentencing Range ("GSR") is 46 to 57 months. The United States respectfully recommends that this Honorable Court impose a sentence of 46 months imprisonment, a period of three years of supervised release, and a $200 special assessment.

Guideline Calculations

U.S. Probation has determined that Knowlton's Base Offense Level ("BOL") is 26. This amount reflects U.S. Probation's determination that Knowlton is responsible for sentencing purposes for the one-hundred (100) eighty (80) milligram OxyContin tablets that were distributed to undercover agents at the Bugaboo Creek restaurant in Peabody, Massachusetts on December 2, 2003, and the one-hundred (100) eighty (80) milligram

OxyContin tablets that were distributed to undercover agents on November 25, 2003.

Knowlton was present at the December 2, 2003 deal. He participated in the deal by engaging in drug related conversation with the undercover agents and accepting $5,500 from an undercover agent in payment for the OxyContin. After the deal, Knowlton traveled to a nearby Newbury Comics store, where co-defendant James Gardner ("Gardner") was provided with thirty (30) to fifty (50) OxyContin tablets. Knowlton and co-defendant Joseph Baldassano then drove to co-defendant Carlos Espinola's ("Espinola") house.

During the December 2, 2003 deal one of the undercover agents complained to Baldassano and Knowlton about being short-changed on a previous OxyContin deal, referring to the November 25, 2003 distribution. In response to the agent's complaint, Knowlton stated, "That's why we counted it three times this time – because of what happened last time" (See PSR para. 20). U.S. Probation correctly found that Knowlton's comments during the December 2, 2003 deal pertaining to the earlier deal on November 25, 2003 "demonstrate the defendant's knowledge and participation in the prior transaction" (See Revised PSR - response to government objections #2 through #4).

Knowlton should be held responsible for sentencing purposes for the one-hundred (100) OxyContin tablets distributed on

November 25, 2003 because the evidence establishes that the deal was reasonably foreseeable to Knowlton and that Knowlton participated in the earlier deal.[1]  A defendant is responsible for all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity (See Revised PSR pages 55 and 56 for citations to authority on the issues of relevant conduct and reasonable forseeability).  Baldassano testified that Knowlton spent time at co-defendant Jason Matthew's ("Matthews") Gloucester residence with other members of the conspiracy, where they used drugs and socialized.  Knowlton admits that on a number of occasions he went with Baldassano to Espinola's house.  There is no question that Knowlton, like the other members of the conspiracy, knew that Baldassano was a major OxyContin distributor.  Knowlton knew the purpose of the conspiracy and the November 25, 2003 deal was reasonably foreseeable to him.[2]

The United States further submits that Knowlton should be held responsible for the thirty (30) to fifty (50) OxyContin tablets distributed to Gardner at Newbury Comics after the December 2, 2003 deal at Bugaboo Creek.  Contrary to Knowlton's

---

[1] On sentencing, the standard of proof is a preponderance.

[2] The Court may also find that Knowlton participated in the November 25, 2003 deal.  Knowlton's comments during the December 2, 2003 deal clearly evidence his participation in the earlier deal.

assertions in his Sentencing Memorandum, he acknowledged his knowledge of this transaction in an October 19, 2004 proffer.

Acceptance of Responsibility

The United states agrees with U.S. probation that Knowlton should receive a three level reduction for his acceptance of responsibility and timely guilty plea. With the three level reduction, Knowlton's Offense Level is 23.

Role in the Offense

The United states agrees with U.S. probation that Knowlton does not merit any sort of role reduction. As aptly pointed out by U.S. Probation in the Revised PSR, Knowlton "is being held accountable only for the quantity of drugs he participated in selling to the undercover agents on December 2, 2003, as well as the prior transaction with which he also appears to have been involved..." (See Revised PSR- response to defendant's objections 1 ans 2 at page 58).

It would be inappropriate and inaccurate to classify Knowlton's participation in the December 2, 2003 deal as minor or minimal. Knowlton engaged the undercover agents in drug related conversation designed to placate the agents and accepted $5,500 in payment for one-hundred (100) Oxycontin tablets. After the deal, Knowlton accompanied Baldassano to a nearby Newbury Comics store, where they met with Gardner and distributed thirty (30) to fifty (50) OxyContin tablets to Gardner. Knowlton then

accompanied Baldassano to Espinola's house in Peabody.

"Safety Valve"

As discussed in the PSR, the United States submits that Knowlton has failed to satisfy the requirements of U.S.S.G. § 5C1.2(a) and is not entitled to the "safety valve." Specifically, Knowlton has failed to provide all information and evidence he has concerning the OxyContin conspiracy. The United States acknowledges that Knowlton was interviewed by agents of the government on October 19, 2004 and discussed the OxyContin distribution conspiracy. The United States never intended that interview to qualify as a "safety valve" proffer and did not make full inquiry of the defendant. Moreover, The United States submits that Knowlton was not entirely truthful during the interview. Since the interview, Knowlton has provided the Court information that contradicts assertions made during the interview. In his Sentencing Memorandum, Knowlton asserts that he had no knowledge of the distribution of OxyContin to Gardner at Newbury Comics, but during his October 19, 2004 proffer, Knowlton acknowledged that he went to Newbury Comics and Gardner was given pills and money. In his Memorandum, Knowlton also minimizes his involvement in the Bugaboo Creek deal. He asserts that his only participation was "to take from one of the agents the sum of $5,500 in payment for the pills." Yet during his proffer, Knowlton acknowledged that he had the OxyContin and he

transferred it to Behsman. He also admitted that he paid Behsman out of the $5,500 that he collected from the undercover agents.

<u>Violations of the Terms of Release</u>

The defendant repeatedly violated the terms of pretrial release set by this Court. On August 4, 2204, the defendant tested positive for marijuana use. In March 2005, he used heroin on one occasion; and in July 2005 he used heroin on several occasions. As a result of these violations, he completed a ninety-day residential treatment program. He completed the program on October 19, 2005, but used drugs again on or about November 11, 2005. As a result of his numerous violations, the Court revoked Knowlton's pretrial release.

## Conclusion

For the above stated reasons, the United States requests that the court impose a sentence of 46 months confinement, three years of supervised release, and a $200 special assessment.

                        Respectfully submitted,

                        MICHAEL J. SULLIVAN
                        United States Attorney

                      By:/s/ David G. Tobin
                        DAVID G. TOBIN
                        Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) .

/s/ David G. Tobin
DAVID G. TOBIN
Assistant United States Attorney

Date: July 12, 2006